## LEMON VS. THE STATE.

It is a well settled general rule that in an indictment for an offence created by statute, it is sufficient to describe the offence in the words of the statute.

In an indictment under section 3, *Art.* 4, *ch.* 51, *Dig.*, for wounding an animal, the owner of the animal is a competent witness for the State (under *sec.* 176, *ch.* 52,) notwithstanding the provision of the statute that damages be assessed in his favor for the injury to his property—his interest going to his credit, not to his competency.

Where the indictment is for killing an animal the measure of the owner's damage is three times the value of the animal; where for wounding, it is competent to prove the expenses incurred, cost of medicines etc., as facts from which the jury many infer the damage to the owner.

Under the 3d *sec. of Art.* 4, *ch.* 51, *Dig.* a person convicted of wounding the animal of another, is liable to the same punishment—including damages to the owner as well as imprisonment—as that prescribed by the 2d section of the same chapter.

*Appeal from the Circuit Court of Conway County.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

WILLIAMS & WILLIAMS, for the appellant.

The indictment is defective in not showing in what the wounding, charged to have been committed by the prisoner, consisted. *State vs. Ayedelot*, 7 *Blackf. Rep.* 157. And malice against the owner of the animal should have been charged and proven. *State vs. Wilcox*, 3 *Yerg. Rep.* 278.

The prosecutor was an incompetent witness, on account cf his interest. 3 *Pick.* 356; 8 *Ib.* 518.

The statute, giving damages, applies to cases of malicious poisoning. *Sec.* 2, *ch.* 51, *Dig.* By the 3d section of the same act, it is provided that for wounding, etc., the person offending shall be punished as in the preceding section. The punishment

in the preceding section is imprisonment for six months. The treble damages is no part of the punishment in the preceding section—being a compensation to the party injured, and not in favor of the State.

Mr. Attorney General JOHNSON, for the State.

The indictment is in the very words of the statute. The manner of the wounding is immaterial. It is the intent with which it is done that constitutes the crime.

If the penalty is designed as a punishment, and not as an indemnity, the question of interest in the prosecutor, cannot arise. Where it is plain that the infliction of a fine or penalty is intended as a punishment, in furtherance of public justice, rather than as an indemnity to the party injured, and that the detection and conviction of the offender, are the objects of the Legislature, the person benefited by the conviction, notwithstanding his interest, will be competent. 1 *Greenlf. on Ev.* 511, 519, *and notes.*

Mr. Justice HANLY, delivered the opinion of the Court.

At the June term, 1856, of the Pulaski Circuit Court, the appellant, Elizabeth Lemon, was indicted under the 3d section of the 4th *Art.* of the 51st *chap.* of the *Digest.* On her application, the venue was changed to Conway county, where, at the March term, 1857, she was tried by a jury, convicted, fined $300, and sentenced to imprisonment in the jail for six months. She appealed from this judgment.

The indictment, upon which the appellant was tried and convicted, is in these words:

"That Elizabeth Lemon, the first day of April, in the year of our Lord one thousand, eight hundred and fifty-six, in the county aforesaid, one sorrel mare and one sorrel colt, of the value of one hundred and fifty dollars, of the goods of Wilson A. Purdom, did wilfully and maliciously wound, contrary to the statute, in such case made and provided, etc."

After the cause was sent to the Conway Circuit Court for trial,

it not appearing upon the transcript that the appellant had interposed any plea before the venue was changed, the counsel for the appellant filed a motion to quash the indictment, assigning as a ground of the motion, that the charge therein is not set out with sufficient certainty and precision.   This motion being considered by the Court, was overruled, and the appellant excepted, and saved this as one of her grounds for a new trial, subsequently made.   We propose taking up and disposing of the several grounds for a new trial, in their order.

1.  Is the indictment sufficient in law?

The statute, under which the indictment is framed, is in these words:

" Sec. 3.  If any person shall, wilfully and maliciously, by any means whatever, kill, maim or wound any animal of another, which it is made larceny to steal, he shall be punished, etc." * * * * See *Digest, ubi sup., p.* 341.

By the 1st and 8th sections of the 2d *Art. of the 51st chap. Dig., pp.* 336, 337, it is expressly made larceny to steal " any horse, mare, gelding, filley, foal, etc."

It is a well settled general rule, that, in an indictment for an offence, created by statute, it is sufficient to describe the offence in the words of the statute; and if, in any case, the defendant insists upon a greater particularity, it is for him to show that, from the obvious intention of the Legislature, or the known principles of the law, the case falls within some exception to such general rule.   But few exceptions to this rule are recognized.   See *State vs. Stanton,* 1 *Iredell Rep.* 424; *Rep. vs. Trier,* 3 *Yeates Rep.* 451; *U. S. vs. Bachelor,* 2 *Gall. Rep.* 15; *State vs. Hickman,* 3. *Hals. Rep.* 299; *State vs. Little,* 1 *Verm. Rep.* 331; *Whiting vs. The State,* 14 *Conn.* 487; *Camp. vs. State,* 3 *Kelly* 419; *State vs. Click,* 2 *Ala.* 26; 2 *Texas* 455; *Com. vs. Hampton,* 2 *Grat.* 590; *Whart. Amr. Cr. Law,* 132.

The act, under which the indictment in this case is framed, is almost a literal copy of the English statute of 9 *Geo.* 1, *chap.* 22, commonly called the "black act," upon which there are several precedents to be found in 3 *Chitt. Cr. Law,* 1086, 1087.  The

indictment, in the case we are considering, seems to have been taken from those precedents. At all events, the offence is charged and described in the indictment before us, in the very language of the act upon which it is framed, and is sufficient, therefore, under the general rule which we have stated above. The Court did not err, consequently, in overruling the appellant's motion to quash.

2. During the trial, the State proposed Wilson A. Purdom, the person whose property is alleged to have been injured, as a witness in her behalf. The appellant objected to his competency, on the ground of interest, but her objection was overruled, and Purdom permitted to testify as a witness, and appellant excepted. This was also urged as one of her grounds for a new trial. Did the Court err in this?

The act under which the prosecution was had in this cause, provides, among other things, that every person convicted thereunder shall be adjudged guilty of a misdemeanor, and the jury who shall try such case, shall assess the amount of damages, if any actual damage have accrued, occasioned by the willful and malicious act of such party, and the Court shall render judgment in favor of the party so injured, for threefold the amount so assessed by the jury, and the offender shall moreover be imprisoned not less than six months. See *Digest* 341.

It is maintained by the counsel for the appellant, that inasmuch as the statute provides for the assessment and ascertainment of the amount of damage which the witness, Purdom, has sustained by the act of the appellant for which she was then on trial; and inasmuch as the act makes those damages—triplicated—the measure of the pecuniary mulct to be imposed as a part of the penalty of the offence, it follows as a necessary legal result that he, though not a party to the record, is not competent to depose in his own favor.

It is provided by the 176*th sect. of the* 52*d chap. Digest, p.* 414, that "no person shall be rendered incompetent to testify in criminal causes, by reason of his being the person injured or defrauded, or intended to be injured or defrauded, or because

he would be entitled to satisfaction for the injury, or may be liable to pay the costs of prosecution."

The issue in a criminal prosecution being between the government and the accused, it is but rarely that private or personal interests are allowed so far to interfere with the cause of justice as to produce the exclusion of a witness. But on the ground of public policy, and in anticipation of cases arising in practice under the statute proceeded on in this instance, the Legislature has seen proper to enact the section given above, by which the general rule of incompetency by reason of interest, is made not to apply. By the section quoted, the witness, Purdom, is expressly made competent, notwithstanding his interest in the penalty or forfeiture prescribed by the act in question. It was certainly competent for the Legislature to have done this. With its policy we have nothing to do. We hold, therefore, that the Court below did not err in deciding Purdom a competent witness for the State. His interest in the pecuniary penalty, being such, under the law as we have held it, as only went to his credit and not his competency.

3. The witness, Purdom, being permitted to testify, he was asked by the attorney for the State, "what probable expense were you put to, to cure the mare and colt? cost of medicines?" to the answering of which, the appellant by her counsel, objected, but which was overruled and the witness permitted to answer the same; for which the appellant excepted, and made this one of her grounds for a new trial. If the animals had been killed by the defendant, which seems not to have been the case, there can be no doubt but that the question propounded would have been improper, for in that event the measure of his damage would have been the value of the animals at the time they were killed. But not being killed, we are at a loss to conceive how his damages could have been properly estimated or computed without such evidence. If the witness had employed a farrier to minister his skill to the cure of the animals injured, his fee or charge, paid by the witness, would have been a fact which the jury should have taken into esti-

mate in making up the measure of his damage. And so for the value of medicine, and personal services rendered, had they been necessary to the well being of mare and colt. See 2 *Greenlf. Ev., sec.* 269.

We hold, therefore, that the Court below did not err in permitting the question propounded to the witness to be answered.

4. After the evidence had been closed on both sides, the appellant asked the Court to instruct the jury, " that they must disregard all testimony about damage resulting from the wounding of the animals, and if the jury find the defendant guilty, they will assess her punishment at imprisonment at not less than six months, and the law does not authorize the finding of any damage for merely wounding animals, wilfully and maliciously." This instruction the Court refused to give, and the appellant excepted and assigned this as another ground for a new trial.

By reference to the 3*d sec. of the* 4*th art. of the* 51*st chap. Digest,* which we have copied above, it will be perceived, that the punishment prescribed for the offence created by this section, is made the same as prescribed for the offence created by the 2d sec. of the same art., which we have also copied. By reference to that it will, also, be perceived that the punishment prescribed in that section is a pecuniary mulct, to be threefold the actual damage which the party injured sustained by the willful and malicious act of the accused, and also imprisonment not less than six months.

It is contended by the counsel for the appellant, that the words " shall be punished " used in the 3d section, only relate to the *imprisonment* named in the 2d section, insisting as he does, that the pecuniary mulct is no part of the punishment, but is simply compensation to the injured party for the damage sustained. In this, we feel no hesitancy in saying, he is certainly mistaken; for it is evident that the giving of three-fold the actual damage sustained by the party, makes that highly penal and as much the fruits of the offence as the imprisonment itself. It was evidently the design of the Legislature to make

the penalty of the two offences created by the 2d and 3d sections the same. Whether there should or should not have been a discrimination is not a question for us to decide. It is not uncommon for the Legislature to prescribe a double penalty for offences, *e. g.* personal punishment and pecuniary fine, and we know of no principle which the policy violates. Such was the evident design of the Legislature in the act before us. It is true by the act we are considering, the Legislature has seen fit to bestow the pecuniary fine upon the injured party, instead of appropriating it to the public; acting, we presume, upon the ground that the public wrong would be compensated by the imprisonment and that the injured party would be restored to his rights and reimbursed in his damages by the pecuniary mulct. In this view, the question is one of policy and not of right or power. We see no reason for disturbing the action of the Court below with regard to this instruction. We, therefore, hold that the Court did not err in refusing the proposed instruction.

This disposes of all the questions presented for our adjudication up to the overruling the appellant's motion for a new trial.

5. The other grounds urged for a new trial are "that the verdict is contrary to the evidence," and "that it is contrary to law."

It will not be necessary for us to notice the evidence further than to say that it was sufficient to warrant the jury in finding the verdict they did. At all events the verdict is not wholly without evidence to sustain it.

We, therefore, hold that the Court below did not err in overruling the motion for a new trial on these grounds.

Finding no error in the record, the judgment of the Conway Circuit Court is affirmed at the cost of the appellant.

Absent, Mr. Justice Scott.